## OCTOBER TERM 1852. 385

Proprietors of Locks and Canals *v.* Nashua and Lowell Railroad Corporation.

PROPRIETORS OF LOCKS AND CANALS & another *vs.* THE NASHUA
AND LOWELL RAILROAD CORPORATION.

The owner of an estate in fee, and a person to whom he has given a bond for a deed
   on the fulfilment of certain conditions, may both join in a petition, under Rev. Sts.
   c. 24, § 48, for damages to such estate caused by taking it for a railroad, although
   the condition of the bond is not then performed. In such case, the railroad com-
   pany cannot object that the damages are awarded in a gross sum, and not
   apportioned to each petitioner.
A railroad was constructed across a watercourse without making a culvert, thereby
   setting back the water and injuring land at some distance from the railroad. *Held,*
   that the damages could not be recovered by petition under Rev. Sts. *c.* 39, § 56.
Depreciation in the value of real estate not abutting on a railroad, caused by laying
   a railroad across the street leading thereto, is not damages recoverable under
   Rev. Sts. *c.* 39, § 56.

SHAW, C. J. This suit was commenced by way of petition
dated July 11, 1850, by the Proprietors of Locks and Canals
on Merrimack River, a corporation, and Horace Howard, of
Lowell, to the county commissioners, praying for the assess-
ment, against the Nashua and Lowell Railroad Company, of
damages sustained by the petitioners, in their land, caused
by the respondents, in laying out their railroad, in the city
of Lowell. The land alleged to have been damaged, is de-
scribed as a lot of 16,280 feet, bounded on a public street, the
Western Avenue, in Lowell. The averment is, that in Au-
gust, 1846, the respondent corporation laid out their railroad
over said Western Avenue, and did, within eight months
thereafter, lay down their track and construct their railroad over
said avenue. The petitioners allege that they have suffered
damage, by obstruction and detention on said Western Ave-
nue, in going to and from their said land ; and further, that in
constructing their railroad over said avenue, the company
raised the grade of the avenue, so that the waste water, which
used to flow off from their own and other land in a gutter
along the side of said avenue, was set back upon the petition-
ers' land.

The commissioners assessed the damages at $100, with
which the petitioners were dissatisfied, and prayed for a jury.

which, after notice, was ordered on the 5th of November, 1850, and a warrant issued accordingly. The jury returned a verdict, under the instructions of the sheriff, for $500. In his return, the sheriff reported two documents, specifying the title of the petitioners, and also a certificate in the nature of a bill of exceptions, setting forth the instructions to the jury asked for, and those given. On the return of the verdict to the court of common pleas, the respondents filed in writing their objections to the acceptance of the verdict. After a hearing, the court passed a judgment, setting aside the said verdict, from which judgment the petitioners appealed to this court. The question is, whether such judgment shall be reversed, and the verdict accepted, or the judgment of the court of common pleas affirmed.

The first objection on the part of the respondents is, that the Proprietors of Locks and Canals could not unite with Howard in one and the same petition; or, if they could, that the jury should have awarded separate damages. It appears by the documents reported by the sheriff, that before the railroad was located and laid over the land in question, it belonged to the Proprietors of Locks and Canals in fee; but on May 14, 1844, they entered into a contract with Howard, the other petitioner, to convey the land to him, upon condition of paying certain sums at certain times, in addition to the first instalment then paid, and this contract was in force when the land was taken, viz: in August, 1846; that subsequently, and before the petition for damages was filed, Howard paid the sums stipulated for; whereupon they executed and delivered to him a quitclaim deed of the land, dated May 16, 1847. This is not within the literal provisions of Rev. Sts. *c.* 24, § 48, of "several parties having several estates or interests at the same time, in the same land." At the time the land was taken, the entire legal estate was in the Proprietors of Locks and Canals, but Howard had what the law regards as an equitable interest, a right to acquire an estate in the land, by a quitclaim only; but this right was contingent, depending upon the future performance of a condition, an interest of which it was scarcely possible to make a separate valuation. Besides; the provision

for separate valuations of different estates or interests, seems intended for the benefit of the claimants; and if they all claim one assessment, without desiring a separate valuation, it seems to be a waiver; so that the respondents, as they cannot be injured by a single assessment, can take no exception to it.

But the case is within the equity and policy of the other provisions of the statute, requiring that when there are various interests, the entire damages shall be first ascertained, as if it were the sole property of one owner in fee simple. This is a provision manifestly for the benefit of the respondents, that they may not, in several processes by separate petitioners, in which the appraisement would be made by different juries, be charged beyond the amount of the damage done to the estate as a whole. When, therefore, there are equitable, collateral, derivative, or contingent interests, though the legal estate in fee is in one, it is proper that all parties having such connected interests may unite in the application. As they would all be bound by the judgment in such case, it operates as a security to the respondents, and cannot affect them injuriously, although such petitioners are not, in a strict sense, joint owners or proprietors of the land.

The situation of the petitioners' land we understand to be this: it is in the westerly part of the city of Lowell, bounds on a public street called the Western Avenue, leading towards the centre of Lowell; the railroad crossed the Western Avenue at a point between the lot and the centre of the city, so that any person, passing to or from the lot in question, to or from the centre, must pass over the railroad; that to adapt the grade of the street to the railroad, the street was raised some feet above the former level, and crossed the railroad on the same level. It does not appear that the railroad passes over the petitioners' land, or that the land anywhere abuts on the railroad, but that it does not pass within some distance of it. The *gravamen* of the petitioners' case is, in the damage done by the railroad in crossing the avenue, at a little distance from their land, the use of which avenue is important to them in various ways.

The first specific claim for damage is placed on the ground, that the railroad company, in constructing their embankment for their road, and in raising the grade of the avenue, as they had a right to do, stopped a gutter which ran along the side of the avenue, at such a slope as to operate as a drain for the surface water of the petitioners' land, and thus set back the water. The court are of opinion, that if the fact were so, it gives no claim for damages necessarily caused to the land by the railroad; for which only this process is given. The right of drainage, and of having the surface water naturally carried off from one's premises over other land, is a public or private easement, the deprivation of which is a nuisance. The railroad company had no right, in laying their road, to obstruct a natural drain; but if they had occasion to cross such drain by an embankment or raised way, it was their duty to place a culvert or covered drain under it, along the highway, at a proper grade, to carry off the water as before. The building of an embankment without such culvert or drain, was not necessary to the accomplishment of their public enterprise, nor to the exercise of any of the powers conferred on them by their charter; it was not warranted by their charter, and, therefore, not a necessary or incidental damage, caused by the exercise of those powers for the public use, and so not a loss to be compensated by damages, for the appropriation of private property to public uses. But the petitioners are not without remedy at law. If the company have obstructed a public easement and committed a public nuisance, they are liable to an indictment, until it is abated. If an easement of the petitioners has been cut off, by which they have sustained a special and peculiar damage, case lies, as for a private nuisance. On a first conviction, the petitioners would be entitled, at the discretion of the court, to a warrant to the sheriff, to abate the nuisance, by replacing the drain or otherwise; and on a second recovery, they would be entitled to such judgment as of right. *Bemis* v. *Clark*, 11 Pick. 452.

The next material question is, whether the depreciation in value of an estate or house-lot not crossed or touched by a railroad, and not caused by an embankment, deep cut, or other

mode of constructing their works, so near such estate or lot as to damage or endanger it physically, can be taken into consideration in awarding damages. It is urged by the petitioners that such diminution of market value is a real and appreciable loss to the owner, as much as if the track were laid over his land, or close alongside of his dwelling-house; that this is a remedial law, to be construed liberally, so as to give a reasonable indemnity for every actual loss. This is plausible, but we think far from being conclusive. The objections to the consideration of this diminution of market value as a substantive cause of loss are, that it is too remote and consequential. The law does not propose to grant indemnity for all losses occasioned by the laying of a railroad. If it did, it would extend to turnpikes and canals, the value of which is diminished or destroyed by loss of custom ; to taverns and public houses deserted or left in obscurity ; to stage-coach proprietors and companies ; to owners of dwelling-houses, manufactories, wharves, and all other real estate, in towns and villages, from which a line of travel has been diverted. If it can extend to the next estate, beyond the one crossed or touched by the railroad, why not to the next, and the next, which may be affected less in degree, but in the same manner. If damage be given for the interruption and inconvenience in passing from the nearest house on the Western Avenue to the city of Lowell, the same inconvenience may be felt by lots No. 2, 3, and so on to 100, and indeed to all those who own lands in that direction from the city. All have to pass by that avenue and cross that embankment in going to or from the city. Indeed, the same is true of all persons, owners of houses or house-lots so situated that it is necessary to cross a railroad track, in going to and from any place which they may have occasion to frequent or visit.

And in this connection the court are of opinion that the sheriff erred in directing the jury as to the nature of special damage suffered by an individual, by obstructions in a highway, other and different from the damage sustained by the public in general; and especially in directing them, " that if the petitioners' land abutting on the Western Avenue, but

33*

not on the railroad, they having a right to pass and repass over that avenue as attached to their land, is reduced in value by the erection of the respondents' track, this would be a special damage, for which they might recover under this process." This, we presume, arose from not sufficiently distinguishing what it is which in law constitutes special damage, author‧izing the party sustaining it to maintain an action for damage caused by a public nuisance. It must be a damage different in kind and not merely in degree ; not that one sustains an in‧jury greater than that of others, but one special and peculiar to himself. If one places a wall across a highway, it is a public nuisance, for which an indictment would lie. But if one riding in the night, not knowing or seeing it, should run against it and injure his person or his property, this would be peculiar to himself and special, and an action would lie. But if such wall were built across a highway, between a man's house and barn, so that the inconvenience to him is extreme and greater than that to all the rest of the community, he might undoubt‧edly abate the nuisance of his own authority, but no action would lie. The damage, of which he would complain, is that of an obstruction to the road, and the inability to use it, pre‧cisely the kind of injury sustained by all the rest of the com‧munity who may have occasion to use it, often or otherwise. If such individual could maintain an action because he has been much incommoded, and recover large damages, the next neighbor might also maintain an action, and recover smaller damages, and so on down to the remotest. The policy of the law is, to avoid multiplicity of actions. When an injury is done by any one in its nature common and general, the law requires, instead of a multitude of private suits, that it shall be the subject of an indictment or other public prosecution, where the whole grievance is redressed by one judicial pro‧ceeding. *Holman* v. *Townsend,* 13 Met. 297.

Supposing, then, that a special damage, differing not only in degree but in kind, such as a direct physical damage on, or to, the land, necessarily caused by the respondents, in the exe‧cution of their public work, and so authorized by their charter, were a proper ground on which to assess damages, still, the

question recurs, whether diminution in the market value of the land, not otherwise touched or affected by it, is such special damage.

Why is the market value of an estate, thus situated, diminished? Is it not because, whenever a purchaser is seeking a house, or a lot to build one on, he perceives at a glance that in passing from his house to the places he will have most occasion to frequent, he must encounter the inconveniences of an intervening railroad, such as passing over an embankment, danger of detention by trains, exposure of children to accident, and the like, considerations which render the house less eligible and attractive? Such a view applies itself to the tastes, motives, and inducements of purchasers. Now the inconveniences of crossing a railroad track, elevated or depressed, or at grade, the possible detention by trains, the noise and smoke, and frightening of horses, the danger to persons, especially children, are those which the whole community suffer alike, in a greater or less degree; but it cannot be contended that every member of such community, or even those so situated as to feel them in a greater degree than others, can maintain a claim against the company for damages on this account. Is then the apprehension of these inconveniences, which might tend to alarm purchasers, and deter or discourage them from buying, a more tenable ground to support a claim for damages? We think not. They are common to the whole community, to be borne by the public in consideration of the greater public good to be acquired. They are, however, to be well considered by the legislature before granting such a charter; and we presume that no wise government would grant a charter tending to such public inconveniences, without a great preponderance of public good to overbalance them.

It is, perhaps, impracticable to state precisely how the law should be laid down for regulating the recovery of damages. We propose, in case there should be another trial, that it be stated somewhat in this form: That all direct damage to real estate, by passing over it, or part of it, or which affects the estate directly, though it does not pass over it, as by a

deep cut or high embankment, so near lands or buildings as to prevent or diminish the use of them; by endangering the fall of buildings, the caving in of earth, the draining of wells, the diversion of watercourses, so far as these are the necessary results of suitable and proper works, to accomplish the enterprise and secure the public easement, which is the object of the charter. Also, as being of like character, the necessary blasting of a ledge of rocks, so near to houses or buildings as to cause damage; running a track so near them as to cause imminent and appreciable danger from fire; by obliterating or obstructing private ways leading to houses or buildings. These, and perhaps many others of like kind, which particular circumstances may present, we think, are proper subjects for the assessment of damages.

But that no damage can be assessed for losses arising directly or indirectly from the diversion of travel; the loss of custom to turnpikes, canals, bridges, taverns, coach companies and the like; nor for the inconveniences which the community may suffer in common, from a somewhat less convenient and beneficial use of public and private ways, from the rapid and dangerous crossings of the public highways, arising from the usual and ordinary action of railroads, and railroad trains, and their natural incidents.

*Judgment of the court of common pleas, setting aside the verdict, affirmed.*

*J. G. Abbott,* for the petitioners.

*B. F. Butler,* for the respondents.